MARCOS ANTONIO REYES LOPEZ,

        Petitioner,

        Case No. 26-cv-725-pp

  v.

SHERIFF DALE J. SCHMIDT,

        Respondent.

## ORDER GRANTING *HABEAS* PETITION, DENYING REQUEST FOR ATTORNEY FEES (DKT. NO. 1) AND CLOSING CASE

On January 15, 2026, Immigrations and Customs Enforcement (ICE) officials arrested the petitioner during an ICE check-in. Dkt. No. 1 at ¶3. At the time of his arrest, the petitioner had been living in the United States for over two years. See id. at ¶¶2. He lived and worked in Illinois after having received a work permit. Id. Since his arrest, the petitioner has been detained in the Dodge County Jail without an individualized bond hearing. Id. at ¶¶3, 5.

On April 24, 2026, the petitioner filed a petition for writ of *habeas corpus* under 28 U.S.C. §2241 seeking an order for release from custody or a prompt bond hearing under 8 U.S.C. §1226(a). Id. at 23 (Prayer for Relief). Magistrate Judge William E. Duffin screened the petition and ordered respondent Sheriff Dale J. Schmidt to answer the petition and show cause why the court should not grant the petition. Dkt. No. 4. On May 5, 2026, the respondent filed his answer and responded to the order to show cause. Dkt. No. 10. The petitioner

1

has filed a reply. Dkt. No. 11. The court will grant the petition and order the respondent to afford the petitioner a bond hearing or, if the respondent cannot comply with that order, to release the petitioner under reasonable conditions of supervision.

## I.   Background

The petitioner is a forty-three-year-old Venezuelan citizen who entered the United States without inspection on approximately December 20, 2023. Dkt. No. 1 at ¶¶16, 22. When he arrived in Eagle Pass, Texas, he expressed a fear of return and was issued a Notice to Appear with a return date of October 20, 2027. Id. at ¶23. He secured a work permit and was working as an assembly worker in Cicero, Illinois up until the date of his detention. Id. at ¶24. The petitioner did not violate any state or federal criminal laws in the United States and has no criminal background. Id. at ¶25. He was arrested without advance notice and has been detained at the Dodge County Jail in Juneau, Wisconsin. Id. at ¶27.

The Department of Homeland Security (DHS) placed the petitioner in removal proceedings, and the petitioner filed an application for asylum under the Convention Against Torture. Id. at ¶29. The DHS filed a motion requesting that the immigration court pretermit the petitioner's applications for relief based on the Asylum Cooperative Agreement with Ecuador. Id. The immigration judge granted the petition and ordered the petitioner removed to Ecuador. Id. The petitioner filed an appeal, which remains pending with the

2

Board of Immigration Appeals. Id. The petitioner remains in custody without having received an individualized bond hearing. Id. at ¶31.

## II.　The Petition

The petitioner alleges that his mandatory detention under 8 U.S.C. §1225(b)(2) violates the Immigration and Nationality Act (INA) and the due process clause. He seeks a writ of *habeas corpus* requiring that the respondent either afford him a bond hearing under 8 U.S.C. §1226(a) or release him. Id. at 11 (Prayer for Relief).

### A.　Jurisdiction

A federal court may issue a writ of *habeas* corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3). A petitioner may file a petition under §2241 to challenge detention orders in immigration proceedings. Zadvydas v. Davis, 533 U.S. 678, 688 (2001).

This court agrees with the other judges in this district who have decided that federal district courts have jurisdiction to consider such petitions in immigration proceedings if "the petitioner is not asking the court to review a removal order, the decision to initially detain him or seek his removal, or any part of the process by which his eligibility for removal will be determined." Ramirez Valverde v. Olson, Case No. 25-cv-1502, 2025 WL 3022700, at *1 (E.D. Wis. Oct. 29, 2025), appeal filed December 23, 2025 (citing Jennings v. Rodriguez, 583 U.S. 281, 294 (2018)). "Title 8, United States Code, Sections 1252(a)(2)(B)(ii), (b)(9), and (g), do not deprive a federal district court of

3

jurisdiction to consider challenges to a person's detention pending removal." Id. (citing H.G.V.U. v. Smith, No. 25 CV 10931, 2025 2025 WL 2962610, at *2-3 (N.D. Ill. Oct. 20, 2025)). See also Cirrus Rojas v. Olson, Case No. 25-cv-1437, 2025 WL 3033967, at *3-4 (E.D. Wis. Oct. 30, 2025) (Judge Ludwig), rev'd 2026 WL 2198315 (7th Cir. July 30, 2026); Lopez De La Cruz v. Schmidt, Case No. 25-cv-1562, 2025 WL 5095296, at *2-3 (E.D. Wis. Nov. 19, 2025) (Judge Adelman); Ugarte-Arenas v. Olson, Case No. 25-C-1721, 2025 WL 3514451, at *3 (E.D. Wis. Dec. 8, 2025), appeal filed January 7, 2026 (Judge Griesbach).

The petition is not challenging the immigration judge's removal order, ICE's decision to detain the petitioner or seek his removal or the process by which the petitioner's eligibility for removal will be determined. The petition challenges only the petitioner's continued confinement at the Dodge County Jail without a bond hearing. Given the limited relief sought, the court concludes that it has jurisdiction to consider the petition.

    B.    The Parties' Arguments

        1.    *Petitioner's Arguments* (Dkt. No. 1)

The petitioner argues that his continued detention without eligibility for an individualized bond hearing violates the INA and the Due Process Clause of the Fifth Amendment. He explains that the INA prescribes three basic forms of detention for most noncitizens in removal proceedings: (1) 8 U.S.C. §1226 for noncitizens already in the country; (2) 8 U.S.C. §1225(b) for noncitizens seeking entry into the country; and (3) 8 U.S.C. §1231(a)-(b) for noncitizens who have been ordered removed (and for whom the order has become final).

Dkt. No. 1 at ¶¶35-41. The petitioner asserts that the respondent's policy, set forth in In re Yajure-Hurtado, 29 I. & N. Dec. 216, erroneously classifies all persons who entered the United States without inspection or admission as "applicants for admission" under §1225(b)(2). Id. at ¶¶44-46. He cites to the statutory text, the statutory framework, Congressional intent, and the longstanding practice of granting bond hearings to most people who entered without inspection and who were apprehended inside the United States. Id. at ¶¶48-60. The petitioner also cites numerous federal courts which have agreed with his position. See id. at ¶¶61-63 (collecting cases). He argues that his detention violates the INA because §1225(b)(2) does not apply to noncitizens like him who entered without inspection and were later detained inside the country after having lived here for more than two years. Id. at ¶¶66-69.

The petitioner also argues that noncitizens are entitled to due process of the law under the Fifth Amendment. Id. at ¶71 (citing Demore v. Kim, 538 U.S. 510, 523 (2003)). Applying the three-part test from Matthew v. Eldridge, 424 U.S. 319 (1976), the petitioner argues that he has been detained in conditions that are indistinguishable from criminal incarceration. Id. at ¶73. He argues that the government's current procedure creates a substantial risk of erroneous deprivation of his interest in being free from arbitrary confinement. Id. at ¶77. He argues that there are reasonable alternatives available to the respondent under §1226(a). Id. at ¶78. According to the petitioner, the respondent's interest in maintaining the current procedure is minimal and flies

5

in the face of three decades of prior practice and the many decisions of federal courts across the country. Id. at ¶79.

The petitioner asks the court to issue a writ of *habeas corpus* requiring the respondent to immediately release him or to afford him a bond hearing. Id. at 23. He asks the court to enjoin the respondent from moving him outside the jurisdiction, declare that his detention violates the INA and Due Process Clause of the Fifth Amendment and award him costs and fees under 28 U.S.C. §2412. Id.

2.    *Respondent's Answer and Response to Order to Show Cause*
(Dkt. No. 10)

After Judge Duffin ordered the respondent to show cause why the court should not issue the writ, dkt. no. 4, the respondent filed an answer to the petition and response to the order to show cause, dkt. no. 10. The respondent asserts that the phrases "applicant for admission" and "seeking admission" found in §1225(b)(2)(A) are synonymous. Id. at 7. In support, he cites the Fifth Circuit Court of Appeals decision in Buenrostro-Mendez v. Bondi, 166 F.4th 494, 502-503 (5th Cir. 2026) for its holding that the words "apply" and "seek" both mean "to request" something. Id. The respondent reasons that because the phrase "applicant for admission" is synonymous with "seeking admission," applicants such as the petitioner, who never have been inspected or authorized by an immigration officer, have not been admitted and therefore are subject to mandatory detention pending removal proceedings. Id. at 8. The respondent argues that the government's statutory interpretation is more consistent with the text and purpose of §1225(b). Id. at 9.

6

The respondent maintains that legislative history leads to the same conclusion. Id. at 11. The respondent contends that before the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the INA provided only for inspection of foreign nationals when they arrived at ports of entry. Id. Those individuals were placed in exclusion proceedings and subject to mandatory detention; individuals found in the United States at a later date were placed in deportation proceedings and subject to bond. Id. (citing former 8 U.S.C. §1182(d)(5)(1994) and 8 U.S.C. §1252(a)(1)(1994)). The respondent maintains that Congress intended to eliminate this discrepancy by enacting §1225(a)(1) to "ensure[ ] that all immigrants who have not been lawfully admitted . . . are placed on equal footing in removal proceedings." Id. at 12 (citing Avila v. Bondi, 170 F.4th 1128, 1135-36 (8th Cir. 2026) (quoting Torres v. Barr, 976 F.3d 918, 928 (9th Cir. 2020); Moran Rayo v. Olson, Case No. 25-cv-2064, 2026 WL 594079, at *4 (E.D. Wis. Mar. 3, 2026)).

The respondent also argues that "Congress has specifically authorized immigration officers to arrest and detain foreign nationals for purposes of removing them from the country, and such procedures have consistently withstood due process challenges." Id. at 12-13. Because the petitioner has been detained only since April of this year, the respondent argues that "this demonstrates that those proceedings are moving forward in a timely manner." Id. The respondent says that the petitioner has not shown that he is being detained for any purpose beyond the resolution of his removal proceedings and that the petitioner is receiving the process to which he is due. Id. at 14.

7

### 3. *Petitioner's Reply* (Dkt. No. 11)

In his reply, the petitioner emphasizes that it is undisputed that he has resided in the United States since 2023, has a pending application for asylum, has a valid work permit, has lived and worked in Illinois and has no criminal background. Dkt. No. 11 at 1. Because he was arrested years after entry by DHS at a routine check-in in Chicago, Illinois (miles away from the border), the petitioner argues he was neither "on the threshold" nor "detained shortly after unlawful entry." Id. at 3. Accordingly, the petitioner argues that he may only be detained under §1226. Id.

The petitioner takes issue with respondent's assertion that he was "seeking admission;" the petitioner says that he entered without inspection and therefore was not "seeking admission" at the time of his arrest. Id. at 4. He adds that "§1225(b)(2) requires a determination by an 'examining immigration officer' that the noncitizen 'seeking admission is not clearly and beyond a doubt entitled to be admitted.'" Id. at 5. The petitioner cites a recent amendment to §1226(c), which added new categories that are subject to mandatory detention. Id. The petitioner argues that the respondent's position would render the recent amendment redundant. Id.

With respect to the due process issues, the petitioner argues that the facts of his case are different than the facts of the petitioners in cases cited by the respondent. Id. at 7. He says that he made a two-month journey to this country to escape personal danger in Venezuela, crossed the border, was detained, was given a valid work permit and filed a timely asylum petition that

8

remains pending with a notice to appear date of October 20, 2027. Id. He emphasizes that the issue of deportation (for which he is receiving due process) is separate from the issue of detention (for which he is not receiving due process). Id. at 8. The petitioner argues that he has a right to be free from unlawful restraint. Id. (citing Hamdi v. Rumsfeld, 542 U.S. 507, 709 (2004)).

The petitioner says that his release would be proper because the respondent does not claim to detain him under §1226 and detention under §1225 is unlawful. Id. at 9. If the court orders a bond hearing, the petitioner asks that the government bear the burden of proving danger and flight risk. Id. at 12.

    C.    <u>Discussion</u>

        1.    *Seventh Circuit Precedent*

Petitioners in this district and across the country have been filing petitions under 28 U.S.C. §2241, asking courts to consider the two statutes that govern the detention and removal of noncitizens: 8 U.S.C. §§1225 and 1226. Most of these petitions ask the court to decide whether the petitioner is eligible for release on bond while removal proceedings are pending. Section 1226 provides for the discretionary release of noncitizens on bond; §1225 requires detention with no opportunity for release on bond. Until July 30, 2026, the Seventh Circuit had not issued a majority opinion addressing this specific issue. As of July 30, 2026, the Seventh Circuit now has joined the majority of circuits holding that noncitizens present in the country without admission and not "seeking admission" fall under §1226, not under

9

§1225(b)(2)(A). <u>Cirrus Rojas v. Olson</u>, Appeal No. 25-3127, 2026 WL 2198315, *2, 17 (7th Cir. July 30, 2026). In <u>Cirrus Rojas</u>, the Seventh Circuit ruled that such individuals are eligible for bond hearings subject to the INA's other requirements. <u>Id.</u>

        2.     *This Court's Analysis*

"As with all questions of statutory interpretation, we start with the text of the statute to ascertain its plain meaning." <u>United States v. Melvin</u>, 948 F.3d 848, 851 (7th Cir. 2020) (quoting <u>Jackson v. Blitt & Gaines, P.C.</u>, 833 F.3d 860, 863 (7th Cir. 2016)).

> In ascertaining a statute's plain meaning, we "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 . . . (1988). Unless words are otherwise defined, they "will be interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. U.S. Steel Corp.,* 571 U.S. 220, 227 . . . (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 . . . (1979)). We find words' ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted, often by referencing contemporary dictionaries. *Jackson,* 833 F.3d at 863. If the statutory language's plain meaning is unambiguous, our inquiry ends there. *See River Rd. Hotel Partners, LLC v. Amalgamated Bank,* 651 F.3d 642, 649 (7th Cir. 2011).

<u>Id.</u> at 851-52. The court must read the statute in a way to give effect to all provisions, "so that no part will be inoperative or superfluous, void or insignificant." <u>Corley v. United States</u>, 556 U.S. 303, 314 (2009).

The respondent argues that the phrase "applicant for admission" under 8 U.S.C. §1225(a)(1) applies to those who have not been admitted to the United States and are physically present inside the United States regardless of "extraneous factors such as proximity to the border, length of time present or

10

subjective intent to apply for admission." Id. (citing the lower court decision in Cirrus Rojas, 2025 WL 3033967 at *8, rev'd 2026 WL 2198315). The text of §1225(a)(1) defines "applicant[s] for admission" as

> [a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

"Admitted" is defined elsewhere in Title 8 as the "lawful entry . . . into the United States after inspection and authorization by an immigration officer." 8 U.S.C. §1101(a)(13)(A). Section 1225 explains that "all aliens (including alien crewman) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. §1225(a)(3).

That is §1225(**a**)(1). There is a separate track under §1225(**b**)(1) for processing arriving aliens and "certain other aliens who have not been admitted or paroled." This includes those who are inadmissible due to fraud, misrepresentation or lack of valid documentation; those whom an officer determines are inadmissible and seeking asylum; and other aliens who receive special designation by the Attorney General. 8 U.S.C. §1225(b)(1)(A)(i)-(iii). Applicants for admission covered by §1225(b)(1) are removed "without further hearing or review" under an expedited removal process, unless the alien "indicates either an intention to apply for asylum . . . or a fear of persecution," in which case that alien is referred for an asylum interview. 8 U.S.C. §1225(b)(1)(A)(i)-(ii).

11

Section 1225(b)(2) applies to all "applicants for admission" not covered by §1225(b)(1). <u>Cirrus Rojas</u>, 2026 WL2198315, at *5-6. Section 1225(b)(2) states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. §1225(b)(2)(A). The phrase "seeking admission" is not defined by statute, but "seeking" is the present participle of the verb "seek;" it implies a present action. "Admission" is defined as a request for lawful entry after inspection and authorization. <u>See</u> 8 U.S.C. §1101(a)(13)(A). Read as a whole, §1225(b)(2) requires mandatory detention of a noncitizen who presently is seeking entry but whom the immigration officer has determined is not clearly entitled to be admitted.

The <u>Cirrus Rojas</u> decision supports that conclusion. The petitioner in that case had filed a petition for asylum. <u>Cirrus Rojas</u>, 2026 WL 2198315, at *7. The Seventh Circuit determined that the petitioners like Cirrus Rojas, who have filed for asylum, are not "seeking admission" to the United States, but are seeking to *remain* in the United States "through other forms of relief that are *not* admission." <u>Id.</u> The petitioner in <u>Cirrus Rojas</u> was present in the country but had not been admitted; he "did not wish to seek the 'lawful' entry that he could never obtain." <u>Id.</u> The Seventh Circuit contrasted Cirrus Rojas's status with that of an applicant for admission at the border who *can* affirmatively seek and secure admission. <u>Id.</u> The Seventh Circuit determined that the statute's plain text showed that Cirrus Rojas—who entered the country without

12

inspection, applied for asylum and was arrested in the United States—was not "seeking admission" and was not covered by §1225(b)(2)(A). Id.

As the Cirrus Rojas court pointed out, the government's reading of §1225(b)(2)(A) is difficult to square with the broader statutory framework. Id. at *12. Section 1226 is titled "Apprehension and detention of aliens." Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). While that decision is pending, the Attorney General may "continue to detain the arrested alien," "release the alien on bond of at least $1,500" or "release the alien on conditional parole." 8 U.S.C. §§1226(a)(1)-(2). An immigration officer authorized to issue an arrest warrant may release an alien if the alien demonstrates that he does not pose a danger to property or persons and that he is likely to appear for future proceedings. 8 C.F.R. §1236.1(c)(8). After the district director makes the initial custody determination (including the setting of a bond), the alien may seek "amelioration" of release conditions, and prior to any final order, an immigration judge may detain the alien, release him or set a bond. 8 C.F.R. §1236.1(d)(1). The Attorney General may revoke bond or parole, and may rearrest and detain the alien "under the original warrant." 8 U.S.C. §1226(b). The United States Supreme Court has referred to §1226 as the "default rule" for arresting and detaining aliens "already present in the United States" pending removal. Jennings, 583 U.S. at 303.

13

There is an exception under §1226(c) that requires the detention of persons "who fall[ ] into one of the enumerated categories involving criminal offenses and terrorist activities." Jennings, 583 U.S. at 303; 8 U.S.C. §1226(c)(1)(E)(i)-(ii). These individuals are not entitled to a bond hearing and may be released under very limited circumstances. 8 U.S.C. §1226(c)(4). Congress recently amended §1226 to include in this section any alien who has been "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or bodily injury to another person." Laken Riley Act, Pub. L. No. 119-1, §2, 139 Stat. 3, 3 (2025). Giving effect to both §1225 and §1226, the United States Supreme Court has offered the following guidance:

> U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

Jennings, 583 U.S. at 289.

Relying on the plain language of both statutes, and giving meaning to all the language of both statutes, the court concludes that the petitioner falls under the ambit of §1226. The petitioner is an alien awaiting a final decision regarding his removal proceeding. At the time of his January 15, 2026 arrest by ICE officials, the petitioner was not seeking admission into the country at a border or port of entry, nor was he seeking admission after inspection. Instead,

14

the petitioner already had been living in this country for over two years. The petitioner does not fall within one of the enumerated categories under §1226(c) involving criminal offenses and terrorist activities, and the respondent has not made such an argument.

In the three decades prior to 2025, this petitioner—a noncitizen who'd been living in the country for more than two years—would have been entitled to a bond hearing under §1226. In 2025, however, the Department of Homeland Security implemented a new policy amounting to a conclusion that prior administrations, the agency and the courts had been misinterpreting the language of §1226 for those three decades. The agency now treats everyone who has entered the United States illegally as an applicant for admission under §1225(a)(1) regardless of how long that person has been present in the United States or how far they are found from the border. The Board of Immigration Appeals gave force to that policy by holding that immigration judges lacked the authority to consider requests to release on bond persons who entered the country without inspection. Yajure-Hurtado, 29 I. & N. Dec. at 229. But the respondent's reading of the statute classifying every noncitizen as an "applicant for admission" renders superfluous the language in §1226(c)(1) and cannot be squared with the text of the statute or the facts of this case.

The Cirrus Rojas court agreed:

Until last year, all three branches of our government agreed that Section 1225(b)(2)(A) applied only at the border. Five successive presidential administrations followed this interpretation. And the Executive's sudden about-face presents its own reason to doubt the government's new reading. We may "consider the consistency of an agency's views," and its "track record" over time, to assess "the

15

persuasiveness of any interpretation it proffers in court." *Biden v. Nebraska*, 600 U.S. 477, 519 . . . (2023) (Barrett, J., concurring) (citation omitted). We accept that when past practice clashes with a statutory mandate, it must change. After all, the courts interpret the law and often order the government to depart from the executive's prior understanding of the law. But here the government's about-face stems from anything but a clear statutory mandate. Instead, the government tries to mix legal fiction with real-world facts contrary to the statute's language. We hesitate to accept such a change after three decades of consistent contrary interpretation. *Cf. FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 156–57 . . . (2000).

Cirrus Rojas, 2026 WL 2198315, at \*15.

The court recognizes that the circuits that have decided this question of statutory interpretation have split 6-2, with the majority rejecting the government's interpretation. Compare Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026); Cirrus Rojas, 2026 WL 2198315, at \*15 (7th Cir. 2026); Rodriguez Vazquez, No. 25-6842, 2026 WL 2196424, \*26 (9th Cir. July 30, 2026); Santillan Quiroz v. Mullin, 180 F.4th 1226 (10th Cir. 2026); Hernandez Alvarez v. Warden, 175 F.4th 1258, 1276 (11th Cir. 2026) with Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026); Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). But this court is bound to follow the Seventh Circuit (and before the Cirrus Rojas decision, had decided the issue the way the majority of circuit courts had done). The court finds that §1225(b)(2)(A) applies to those noncitizens who are applicants for admission and seeking admission at the border or port of entry, and that §1226 applies to those noncitizens arrested in the interior of the country.

16

Because the petitioner was arrested over two years after his entry to this country and many miles from the border, he falls under the ambit of 8 U.S.C. §1226. The court finds that his continued detention under §1225 without a bond hearing violates federal law.

In his request for relief, the petitioner requested fees under 28 U.S.C. §2412, but has not filed an application as required under the Equal Access to Justice Act. 28 U.S.C. §2412(d)(1)(B). The petitioner would be entitled to fees only if the (1) government's litigation position was not substantially justified; (2) no special circumstances make an award unjust; and (3) the request is timely filed. 28 U.S.C. §2412(d)(1)(A), (B); Cunningham v. Barnhart, 440 F.3d 862, 863 (7th Cir. 2006). Given the circuit split on this issue, it is difficult to argue that the government's position was not substantially justified. See Herrera v. Olson, Case No. 25-cv-1994, 2026 WL 1602258, at *2 (E.D. Wis. June 4, 2026) (finding the division within this district and across the country supports a finding that the government's position was substantially justified).

## III. Conclusion

The court **GRANTS** the petition for a writ of *habeas corpus*, filed under 28 U.S.C. §2241, dkt. no. 1, under the following conditions:

The court **ORDERS** that within seven days of the date of this order, the respondent must (1) afford the petitioner a bond hearing before an immigration judge under 8 U.S.C. §1226(a), at which time the government must bear the burden of justifying the petitioner's continued detention by proving, by clear and convincing evidence, the petitioner's dangerousness or flight risk; or (2) if

17

the respondent cannot otherwise comply with the court's order, release the petitioner from custody under reasonable conditions of supervision.

The court **DENIES** the petitioner's request for attorneys' fees. Dkt. No. 1 at 11.

The court **ORDERS** that this case is **CLOSED**. The clerk of court will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 31st day of July, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**